THE JACKSONVILLE, NORTHWESTERN AND SOUTHEASTERN
RAILROAD COMPANY

*v.*

JOHN COX.

1. SURFACE WATERS—*diversion to injury of adjacent owner.* A railroad company has no right to stop, by its embankment, the natural and customary flow of the surface water from higher grounds, and by its ditch along its track convey the same upon the premises of another over whose land its road is con-

structed, without providing some sufficient outlet for it to pass off; and where such person's land is injured in consequence of the accumulation of such surface water on his land, the company will be liable to him for all the damages occasioned thereby.

2. In such case the party so injured is under no legal obligation to permit the servants of the company to dig a ditch, to his detriment, across his tillable land, wide and deep enough to carry off the accumulation of foreign surface water so thrown upon his premises. The company should provide for the egress of such water without damage or injury to such party, or prevent its flow upon his land.

3. And in such case the fact that the owner of the land gives the company permission to dig a ditch along a wagon road on his premises to carry off such surplus foreign surface water, which proves ineffectual for the purpose, will not preclude him from a recovery for the original wrongful act.

4. SAME—*land owner, when not estopped by his deed for right of way.* Where a party over whose land is constructed a railroad track, which, by its embankments and ditch, has caused the surface water from other lands to be diverted from its natural course and thrown upon his land, gives the company a deed for right of way over his premises, in pursuance of a written agreement made before the construction of the road, he will not thereby be estopped from recovering damages occasioned by the wrongful construction of the road. Such a deed gives the company no right to flood his remaining land with water brought by it from other lands, the natural flow of which would have carried it another way, when the consideration of the deed is only for the land conveyed.

5. It is one of the maxims of the law, that every man must so use his own as not to injure another in the use and enjoyment of his property.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. DUMMER, BROWN & RUSSELL, and Messrs. PATTON & LANPHIER, for the appellant.

Messrs. BRADLEY & BRADLEY, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In the fall of 1871, appellant constructed its railroad track from Jacksonville to Virden, running through the farm of appellee. In February, 1876, appellee brought suit in the Sangamon circuit court, alleging damages by reason of the loss

of rents and profits for the years 1872, 1873, 1874 and 1875, occasioned by the wrongful and negligent manner in which appellant had constructed its road, whereby his farm had been flooded. A trial before a jury, at the February term, 1877, of the court, resulted in a verdict and judgment in favor of appellee for $400.

We think the evidence sufficiently sustains the verdict. There was some conflict in the testimony, but this conflict was settled by the jury in favor of appellee. One Watson entered the eighty acres of land in question in 1840, and commenced improving it, and sold it in 1857. The land has ever since been in cultivation. It was purchased by appellee about 1867, and he has continued to live there until now, with his family, farming. He appears to have made good crops until after the building of the railroad of appellant. The land was originally low and wet, and it has continued to be troubled with water, to some extent, in wet seasons or after hard rains. The surface of the ground had been raised, however, by many years of cultivation; and the water that fell on the land, or ran on to it from adjoining premises, escaped to the southwest through a small ditch that had been plowed there, and there was also a drainage from part of the land to the north. The premises had become, to say the very least, reasonably good tillable land.

The railroad embankment was constructed through the north forty acre tract of the farm, from south-east to north-west, and a ditch was dug by the railroad company on the south side of the railroad, extending from the farm a considerable distance to the south-east. The lands, for a mile or more to the south-east of appellee's premises, fell off to the north, and the water from these lands, lying south of the railroad, drained, before the building of the railroad, off to the north into Devore's branch. By the construction of the embankment and excavation of the ditch this water was cut off from its natural course to the north, and was turned west to the premises of appellee. The natural drainage and the ditch

that had been plowed by appellee were wholly insufficient to carry off the accumulated surface water that was precipitated by the railroad embankment and ditch upon his lands. The consequence was he lost the crops on some twenty-five or thirty-five acres of his land, in the years 1873, 1874 and 1875. These were, it is true, wet years; yet the evidence shows it was principally the additional surface water turned on the land by the company that flooded it and destroyed the crops, and that without this surplus water appellee could, with the means of drainage he theretofore had, have cultivated, even in those years, all or the most of his farm.'

The railroad company had no right to stop, by its embankment, the natural and customary flow of the water from. the high grounds south of the railroad to the north and thence into Devore's branch, and by its ditch on the south side of the road to carry this water on to the premises of appellee, without providing some sufficient outlet for it to pass off. When it undertook to divert and change the usual and customary flow of the water, it was bound to provide sufficient means to carry it away from the farm of appellee, upon which it had caused it to accumulate. By conducting this surface water, which otherwise would have gone elsewhere, on to the farm, it virtually entered upon the farm and deprived the owner of the profits which he otherwise would have derived from its cultivation. Even if his farm was on low ground and in a depression, that did not license the company to increase the difficulties to which the owner was already subjected, by throwing an additional burden of water upon him by diverting it from the natural channel. *Nevins* v. *City of Peoria,* 41 Ill. 502; *Gillham* v. *Madison County Railroad Co.* 49 id. 484.

Appellant having brought this body of unaccustomed water upon the farm, it was its duty to provide ample and sufficient means for its egress therefrom, without injury or damage to appellee. The latter was under no legal obligation to permit the servants of the corporation to dig a ditch to his detriment diagonally to the south-west through his tillable land, wide

enough and deep enough to carry off this accumulation of foreign surface water. Appellant should have performed the duty imposed upon it either by ditching along its right of way, or by getting the privilege, by purchase or otherwise, from appellee or some adjacent land owner, to drain the water through lands not its own, or else it should have filled up the ditch it had dug, and, by necessary openings in its embankment, have restored the water to its ancient and natural flow across to the north side of the railroad track, whence it would have found its old way north to Devore's branch.

The fact appellee gave the company permission to dig a ditch alongside of the wagon road through his premises, and that this ditch proved ineffectual to accomplish the purposes for which it was intended, does not prevent a recovery in this case. It was incumbent, at all events, upon the company to provide egress for the water it had wrongfully brought upon the land. The injury was done, not by the ineffectual ditch that was afterwards dug for draining the water off, but by bringing the water there. A party may not recover for an injury to which he himself has materially contributed, or for the consequences of an act, the performance of which was requested by himself; but here the acts that caused the damage were the stopping of the natural outlet of the water that fell on large tracts of land east of appellee and south of the railroad, and the digging of the ditch along the right of way that conducted the water down on to the premises of appellee. The most that can be said of appellee's conduct is that, being anxious to get rid of the flood that had been brought upon him, he materially contributed in providing a supposed remedy for the existing evil, which remedy proved a failure.

On the 4th day of October, 1871, appellee entered into a written agreement by which he contracted, for a consideration named therein and to be afterwards paid, to convey to the company, on demand, by deed, for right of way, a strip of ground thirty feet wide on each side of the line of the company's railroad, as the same might be located across his lands.

The railroad was constructed that fall.   On the 6th day of the following March, appellee conveyed the strip of ground to the company for the consideration of $181.

It is urged that this deed, it having been made after the railroad of appellant was constructed, estops appellee from recovering damages occasioned by the wrongful construction of the road, and that it was error in the court below to refuse giving this instruction:

" The court instructs the jury, for the defendant, that if they shall believe, from the evidence, that the defendant purchased of the plaintiff the land on which the railroad is located through the plaintiff's farm, and, at the time of the execution and delivery of the deed therefor, the road was made, and no changes have since been made by the defendant in said road to cause the water to overflow the plaintiff's land, then the plaintiff is estopped from claiming or recovering any damages in this suit, and the jury will find for the defendant."

The deed was the mere performance of the contract appellee had made prior to the building of the road, for the conveyance of the land.   It may be he was estopped by the deed from complaining of the manner in which the railroad was located through his land, but it gave the company no right to flood his remaining lands with water brought by it from lands other than his, the natural drain of which would have carried it far from his premises.   Although the deed was an absolute conveyance and granted the strip of ground as it actually existed, yet it granted nothing more.   The consideration is expressed in the deed to have been paid for the land conveyed, and there is no pretence for saying part of it was paid for the privilege of overflowing the lands still retained by appellee with water conducted by the company from other lands, some of them distant a mile or more therefrom.   There might be merit in the claim of appellant if the water complained of had been water that fell on the ground deeded to the company or that had naturally flowed there without the artificial aid and

affirmative act of appellant. But the damages here grew out of the improper construction of the road south and east of the strip deeded and extending for more than a mile therefrom. Appellee was not bound, before making a deed to the sixty feet of ground through his farm for the use of the railroad, to make a survey of the track of the road for miles either way from his lands for the purpose of ascertaining whether, owing to the manner of the construction of the road beyond his land, additional surface water would be conducted on to his premises. He had a right to presume that appellant, in building its road, either had not changed the natural and customary flow of water from other lands so as to throw it upon his farm, or, if it had done so, that it had made all necessary provision for its egress therefrom, without inundating his premises. It is one of the maxims of the law, that every man must so use his own property as not to injure another in the use and enjoyment of his property. The instruction, the refusal of which is complained of, was properly refused by the circuit court.

We find no substantial error in the record, and the judgment of the court below is affirmed.

*Judgment affirmed.*