GULF, COL. & S. F. R'Y CO. v. SAMUEL HELSLEY.

(Case No. 1592.)

1. DAMAGE TO LANDS — RAILROAD — STATUTE CONSTRUED.— Article 4171 of the
   Revised Statutes, regulating the manner in which a railroad should con-
   struct its road-bed, so far as the necessary drainage to land is concerned,
   was intended to furnish a simple rule to adjust the rights of persons whose
   property might be damaged by water, not confined in water-courses, by rea-
   son of the construction of the railroad, and to compel railway companies,
   by constructing the necessary sluices and culverts in accordance with the
   natural lay of the land, to prevent any such damage from arising.
2. SAME — RAILROAD.— If a railway company undertakes to change the flowing
   of surface water on land, it must see that· such change does not operate to
   the injury of the land-owner.   Following R'y Co. v. Donahoo, 59 Tex., 129.
3. SAME — LIABILITY OF RAILROAD.— If a railway company fails to construct
   the proper culverts, sluices or ditches necessary to pass off the surface water
   by the way it flowed before the railway was built, then it is responsible for
   such damage incurred from such neglect.   Citing Salem v. Eastern R. R.,
   98 Mass., 430; Hoyt v. Hudson, 27 Wis., 656; R. R. v. Stevens, 73 Ind., 278,
   and other cases.
4. MEASURE OF DAMAGES — CHARGE OF COURT.— A charge of the court on the
   measure of damages as follows was held incorrect:  "If you find for the ·
   plaintiff, you will find for him such a sum of money as the evidence shows
   he has been damaged, not exceeding the amount of damages alleged.   In
   estimating the damages you may find for plaintiff, if any, you will do so by
   estimating the market value of the land at and just before the time of build-
   ing of the railroad, and the market value of the same after the injury was.
   done, if any be shown by the evidence to have been done."
5. MEASURE OF DAMAGE AS TO LAND.— In an action brought to recover dam-
   ages to lands caused by the negligent and unskilful construction of a rail-
   way on land near those injured, producing overflow, and the like, the true
   measure of damage is the injury which the land and other property sustains
   from the successive overflows when they occur.   Following Van Pelt v.
   City of Davenport, 42 Iowa, 314.

APPEAL from Johnson.   Tried below before the Hon. Jo Abbott.
Appellee Helsley brought this suit against the appellant, the
railway company, to recover damages to lands of appellee, alleged
to have been caused by the negligent and unskillful construction of
appellant's railway on lands near those of appellee, causing overflow,
etc.   The nature and extent of the damage complained of is suffi-
ciently set out in the opinion.   At the trial had below, the jury ren-
dered a verdict in favor of appellee for $225.

*De Berry & Smith* and *Gresham & Jones*, for appellant, cited, on
the measure of damages: Van Pelt v. City of Davenport, 42 Ia.,
308; R'y Co. v. Morris, 35 Ark., 622.

*J. M. Hall* and *W. F. George*, for appellee, on measure of damages, cited: Shear. & Redf. on Negligence, p. 607; Wood's Mayne on Damages, p. 540; 1 Sedgwick on Damages, p. 267.

STAYTON, ASSOCIATE JUSTICE.— It appears in this case that the appellant constructed its railway on the land of another, but in near proximity to the east line of the land owned by the appellee, and that its railway was constructed over a water-course which ran through the appellee's land and field.   It is claimed that the railway over this water-course was so constructed that room was not left for the free passage of water during seasons of heavy rains, and that thereby the water was forced back and caused to overflow the land of the appellee.

It is further claimed that the water which fell on the northern part of the appellee's land, and on land contiguous to it, was accustomed to flow in a northeastern course into a natural depression, which led it into a creek which did not run through the land of appellee, and that an embankment without culvert, or other way for the water to pass, as it had before done, was erected over the depression which had formerly served as a water-way, and that to carry off the water which accumulated at that point the appellant caused a ditch to be dug on its right of way, which carried the water near to appellee's land along his entire tract, and emptied it into the water-course before spoken of, near the southwestern corner of appellee's land.

It is claimed that this ditch was not skilfully constructed, and that it was insufficient to carry off the water, whereby it overflowed, and the water therefrom ran onto the field of appellee and destroyed his crops and injured his land; and it was also claimed that the addition of water, thus thrown into the water-course, caused it to overflow the land and destroy his crops to an extent which would not have occurred from the water which naturally flowed into the water-course.

The evidence bearing on these matters is conflicting.

The question of dominant and servient estates is presented in brief of counsel very fully; but in view of the legislation had in this state, in so far as railways are concerned, it becomes unnecessary for us to enter upon that question, on which there is much conflict of authority between the courts which follow the rule of the civil law in this respect, and those courts which assert a different rule under the common law.

The statute provides that " in no case shall any railroad construct a

road-bed without first constructing the necessary culverts or sluices, as the natural lay of the land requires for the necessary drainage thereof." R. S., 4171.

The intent of this statute is evident, and it was doubtless in· tended, in this class of cases, to furnish a simple rule by which would be avoided the difficulty which has been so often felt in adjusting the rights of persons under the conflicting decisions to which the arguments in this case refer.

It was intended thereby to compel railways to construct such culverts or sluices as were necessary to permit water not confined within water-courses, as that term is usually understood in legal works, to flow, after a railway is constructed, as it did before, in accordance with the "natural lay of the land;" to compel them to permit the flow of surface water as it aforetime had naturally done; and culverts or sluices which do not permit this are not the necessary culverts or sluices contemplated by the law.

If a railway company undertakes to change the flowing of surface water, it must see to it that such change does not operate to the injury of the land-owner. This question was considered· in G., C. & S. Fe R'y Co. v. Donahoo, 59 Tex., 129; and by the court of appeals of this state in case of Fort Worth & Denver City R'y Co. v. Scott, White & Willson's Cond. Rep., vol. 2, p. 140.

If the statute be too stringent it rests with the legislature to alter it; the courts have neither the power nor right to disregard its plain provisions.

Even by courts which follow what is considered the common law rule, if surface water is collected into artificial channels and thereby in increased quantities thrown upon the land of another, the person who causes this to be done will be liable for such injury as results. City of Salem v. Eastern R. R. Co., 98 Mass., 430; Hoyt v. City of Hudson, 27 Wis., 656; Livingston v. McDonald, 21 Iowa, 160; C. & V. R. R. Co. v. Stevens, 73 Ind., 278; Miller v. Laubach, 47 Pa. St., 154; Kauffman v. Griesemer, 26 Pa. St., 417. Some of these cases are from states in which the civil law rule seems to be recognized.

If it be true that the lands of the appellee or his crops have been injured by the failure of the appellant to construct such culverts or sluices as are necessary to pass off the water by the way it flowed before the railway was built, then it is responsible for such damage as has occurred from its neglect.

And if the appellant has assumed to change the natural flow of surface water, and to force it through a ditch which is not sufficient

for that purpose, and it for that reason overflows the appellee's land, it then is responsible for such damage as results from that cause.

The charge of the court, in the main, presented the law of the case to the jury in as favorable a form to the appellant as would have been authorized, if it did not go even further, in relieving the appellant from liability if it employed skilful persons to construct its road, than the law would justify.

The charge, however, in reference to the measure of damages, was incorrect.

The charge was as follows: "If you find for the plaintiff you will find for him such a sum of money as the evidence shows he has been damaged, not exceeding the amount of damages alleged. In estimating the damages you find for plaintiff, if any, you will do so by estimating the market value of the land at and just before the time of building of the railroad, and the market value of the same after the injury was done, if any be shown by the evidence to have been done."

Of this charge we may say as was said of a similar charge by the supreme court of Iowa: "The rule announced by the court is the proper one when the act complained of takes a part of or affects a change in the realty itself, which is the subject of controversy. In this case no part of the land was taken, nor was any change wrought upon it. The only detriment which the land sustains is its liability to overflow from unusually heavy rains.

"The true measure of damage is the injury which the land and other property of the plaintiff sustains from the successive overflows when they occur." Van Pelt v. City of Davenport, 42 Iowa, 314.

If the appellee's crops have been destroyed or damaged by the negligence or wrong of the appellant in the matters complained of, then he is entitled to recover their value, and if his land has been rendered less productive, or otherwise injured, then he is entitled to recover such damage as will be a fair compensation to him for the loss thus sustained, and from time to time, if injury results to him from the negligence or wrong continuing, he will be entitled to relief by a proper action or actions.

For the error mentioned, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 9, 1884.]