RAILWAY COMPANY *v.* COOK.

Opinion delivered March 11, 1893.

1. *Opinion evidence—Non-expert.*

　　A non-expert witness cannot be asked whether an outlet of one hundred feet in a railway's road-bed is sufficient to carry off the water of a certain stream in time of ordinary flood, since the question calls for an answer requiring special knowledge and skill.

2. *Watercourses—Duty of railway to provide outlets.*

　　It is the duty of a railroad company to provide proper and sufficient openings or culverts for the escape of the water of all streams crossing its road-bed, so as not to flood the land of upper riparian owners, whether at ordinary stage of water or during floods which could reasonably have been foreseen and guarded against ; and if it fails to provide such openings, it is liable to any person damaged thereby.

3. *Outlet for stream—Surface water.*

　　In constructing its road across a stream, a railroad company should provide an outlet, not merely for the water falling within the banks of the stream, but also for all water which had been accustomed to flow into the stream from the surface of the adjacent country.

4. *Overflow—Measure of damage.*

　　In an action to recover the damage to land from an overflow caused by a continuing but removable nuisance, such as an insufficient outlet in a railway track, the measure of damage, in the absence of any injury to the soil, is the loss to the owner in the use or the rental value of the land, not in its salable value.

Appeal from Craighead Circuit Court, Jonesboro District.

JAMES E. RIDDICK, Judge.

Cook brought an action against the Kansas City, Fort Scott & Memphis Railroad Company to recover for injuries to his land by overflows caused by the lack of sufficient openings in defendant's road-bed at the point where its line of railroad passes over and across Cache river and the adjacent sloughs entering into said river. Plaintiff recovered a judgment of $150, and defendant has appealed.

The court, upon its own motion, gave the following among other instructions:

"2. The jury are instructed that it is a duty of a railroad company to provide proper and sufficient openings or culverts for the escape of the water of all streams crossing its road-bed so as not to obstruct and cause the water to overflow the lands of upper proprietors, whether at times of ordinary stage of water in such streams or from floods which, by the exercise of proper care and skill, could have been foreseen and guarded against, and if they fail to provide such openings they are liable to any person damaged by such failure."

"3. If the jury find, from the evidence, that the defendant railway company filled an opening in its road-bed across Cypress slough or Cache river with a solid embankment, not leaving opening enough for the escape of the waters which would naturally seek an outlet in the channel of said streams in times of high water, and that the plaintiff's land was overflowed and damaged by the backing or damming up the waters of said streams, resulting from a want of sufficient openings for the escape of the waters of said slough and river, and that such result of the filling of said openings could have been foreseen and guarded against by the use of ordinary

care on the part of defendant, they will find for the plaintiff.''

"4.   The defendant company was only required to use ordinary care in constructing their roadbed and openings therein, and if they exercised such care and left openings sufficient to carry off the waters which would reasonably be supposed to flow along said slough and river, but that the overflow which injured plaintiff's land, if injury be found, was of such extraordinary character that ordinary prudence would not have provided against it in the construction of the openings, then defendant is not liable, and they should find for defendant. In other words, if the flood, though extraordinary, might, by the use of ordinary care, have been anticipated and guarded against, then the company would be liable for damages occasioned by failure to provide sufficient openings, but it would not be required to provide openings sufficient to carry off the waters of a flood so extraordinary that its occurrence would not reasonably have been foreseen and provided against.''

"5.   The court instructs the jury that under the statute of Arkansas this defendant was authorized to construct its road across Cache river, Cypress slough and all other streams and watercourses on the line of its railroad, and if, in the proper construction of bridges over such streams, damage was unavoidably done to the land of plaintiff, or if damage incidentally resulted from the proper construction thereof to plaintiff's land, still the defendant is not liable.''

"7.   If the jury find for plaintiff, they will assess his damages by ascertaining first, what the value of plaintiff's land would have been had such railroad embankment been constructed with sufficient openings for the passage of the water, and then by ascertaining what the value of said land was at the time such embankment complained of was built, supposing the consequences of

filling in such embankment to have been known, and they will deduct the latter from the first, and assess plaintiff's damages at the remainder, or difference left."

The defendant asked, and the court refused to give, the following instructions :

1.   The court instructs the jury that the defendant is not liable for failing to construct bridges or leave openings so as to pass extraordinary floods or freshets. And, although you may find that the lands of plaintiff were overflowed by back water during extraordinary floods or freshets by the reason of the defendant failing to construct bridges and leave openings in its embankments sufficient to pass the waters of such floods or freshets, still, the defendant would not be liable by reason thereof, and your verdict should be for defendant."

"2.   The court instructs the jury that all the waters not carried within the banks of Cache river, Cypress slough, Bohanan slough and Gum slough are in law surface waters, and if it was necessary for the defendant to fill in the opening with solid embankments for the better safety of its road-bed and the traveling public, and in so doing exercised reasonable care and skill, it would not be liable for any damages sustained by the plaintiff resulting from the filling in of such opening."

"3.   The court instructs the jury that if you find from the evidence that the trestle work was put in the road-bed by defendant as a temporary structure, and it was necessary for the safety of the road-bed, and the safety of the traveling public, to change the structure from the trestle work to a solid embankment, and such change was made by the defendant in a reasonably skilful manner, and injury unavoidably resulted from such change to the lands of the plaintiff, still the defendant would not be liable."

"4.   The court instructs the jury that the defendant was not required to provide sufficient openings at

the crossings of the railroad of Cache river and Cypress slough or other streams or water courses, to drain the country between these streams or to carry off the accumulations of mere surface waters, but is only required to build its bridges across said water courses of sufficient height and length to carry off the waters of said streams carried within their banks in times of ordinary high water."

*Wallace Pratt* and *Olden & Orr* for appellant.

1. The complaint fails to state a cause of action. It fails to state that defendant negligently or unskilfully constructed its road, and that by reason thereof insufficient openings were left, which caused the damage. 12 S. W. Rep. 815. Negligence should be alleged specifically. 6 Mo. App. 578; 37 Ark. 32; 31 *id.* 278; 95 Mo. 368; 93 *id.* 445.

2. To entitle plaintiff to recover, two things must occur, damage to his land, and that damage must be caused by the negligent and unskilful acts of defendant in the construction of insufficient openings for the passage of the waters, in times of ordinary high water, which could reasonably have been anticipated and provided for. The evidence fails to show this. The rental value of the land is not shown, and the only damage shown was a failure to raise a crop on eight acres. If a recovery could be had at all, it could only be for nominal damages. 55 Ark. 294; 3 Suth. Dam. p 415. Public policy requires railroads to be constructed so that they may be operated with safety to the public, and if in their proper construction private property remotely located is indirectly injured, the railroad is not liable. 35 Ark. 622. They are not liable for injuries which are the natural and unavoidable effect of their road. 36 Mo. 202. See also, 83 Mo. 271; 85 *id.* 87; 39 Ark. 463. The non-expert testimony for plaintiff should have been excluded.

20 S. W. Rep. 515.    Railroads are not liable for injuries caused by extraordinary floods which could not reasonably have been anticipated.    Wood, Ry. Law, vol. 2, p. 875; 56 Me. 443; 56 Pa. St. 445.    In the light of the above authorities the court's charge was erroneous.    It was the duty of the railroad only to provide openings sufficient to pass ordinary freshets.    The court also erred in its 7th instruction as to the measure of damages.    52 Ark. 240; 20 S. W. Rep. 517.    Sloughs or swales are not watercourses.    Accumulations of surface water in times of high water form no part of watercourses or running streams.    27 Wisc. 661; 18 Mo. App. 254.

*B. H. Crowley* and *T. P. McGovern* for appellee.

Plaintiff's claim accrued at the time of the completion of these openings, and has no relation to the original construction of the road.    39 Ark. 463.    The instructions fully declare the law as to the liability of the railroad for failure to provide openings sufficient to carry off the waters of even an extraordinary flood, if ordinary prudence and foresight could have anticipated and guarded against it.    2 Wood, Ry. Law, p. 875; 30 Am. & E. R. Cases, 200.    The measure of damages is laid down in 30 Ark. 622.    The complaint sufficiently charges negligence.    20 A. & E. Enc. Law, p. 389. It is the duty of a railroad to provide sufficient openings for the escape of water of all streams crossing its road-bed, so as not to overflow lands of upper proprietors, whether at ordinary stage of water, or from floods which by the exercise of ordinary skill and care, could have been foreseen and guarded against.    39 Ark. 463; 45 *Id.* 253; 2 Wood, Ry. Law, pp. 875, 876, 879. The evidence of plaintiff was admissible.    17 Conn. 249; 21 Tex. 256; 26 *Id.* 147.

HEMINGWAY, J.    This is an action for injuries to land alleged to have resulted from the negligent manner in which the defendant changed the structure of its road bed; it is alleged that the defendant originally constructed its road with sufficient openings, but that in the fall of 1889 it made a change, substituting a solid embankment for a trestle, and thereby encroached upon the channel of Cache river and adjacent sloughs so as to obstruct the flow of water through them, and cause it to flow back on plaintiff's land; that during the following winter his land was by this means overflowed, and the planting of a crop that year prevented; and that the market value of the land was destroyed by reason of its liability to overflow.

The facts are not distinctly alleged, but upon a liberal construction it may be said that they sufficiently appear from the complaint.

The answer denied the negligence charged, or that the plaintiff had been injured by the change in the road bed.

1.  The first matter presented as a ground for reversal is the court's action in the admission of evidence. The plaintiff was introduced as a witness, and testified that Cypress slough was about a mile and a half from his land; that where it crossed the defendant's road its channel was about a quarter of a mile wide, and originally the road had been constructed across it upon an open trestle; that in the fall of 1889 the defendant removed the trestle, and made a solid embankment, except for a distance of one hundred feet; that in the following winter plaintiff's land was under water that seemed to be backed up the slough from the railroad; that he was not at the opening of the slough or its crossing of the railroad during the overflow.    Thereupon the following question was propounded:    "From your knowledge of the country and of the water carried by

*1. Admissibility of opinion of non-expert.*

Cypress slough in times of ordinary high water, do you think the openings sufficient to carry off the waters in times of ordinary flood?" The question was objected to by the defendant, but the objection was overruled, and the witness testified that he thought the opening was not sufficient. He did not testify as an expert, nor was his opinion asked of a matter determinable by conditions he had seen and described, but could not accurately portray. But it was assumed that he knew the trend of the country and the volume of water discharged by Cypress slough, and upon that basis he was asked whether an opening, which he had said was one hundred feet wide, would furnish a sufficient vent for the water. We are of opinion that the question called for an answer requiring special knowledge and skill, and could not properly be answered by a non-expert.

2. Duty of railway to leave outlet for water-course.

2. The next ground relied upon is that the court erred in giving the second, third, fourth and seventh instructions upon its own motion, and in refusing to give the first, second, third and fourth asked on behalf of defendant. The reporter will embody the instructions in his statement of the case, and we will consider the objections urged to the court's action with regard to them without setting them out. The objection to the fourth of the instructions given by the court upon its own motion is thus set out in the defendant's brief: "It states that, though the flood might be extraordinary, still if it might, by the use of ordinary care, have been anticipated and guarded against (by the defendant), then the defendant would be liable for damages" to plaintiff caused by a failure to leave sufficient openings. And, continuing, it insists that "the law only requires that the openings where the bed of a stream crosses its tracks be sufficient to pass ordinary freshets." The law exacts ordinary diligence, and makes a failure to exercise it actionable. If the defendant could reasonably have foreseen the com-

ing of extraordinary freshets, and could reasonably have
so constructed its bed as to permit their floods to pass
without damage to upper proprietors, the duty of dili-
gence exacted it; but if such freshets could not reason-
ably have been anticipated, or if the passage of their
floods could not have been provided for by the exercise of
reasonable care, the duty of diligence did not require it.
Of this the jury were fully advised by the instruction,
which, instead of being subject to objection, contained a
plain, correct and ample statement of the doctrine of
ordinary diligence as applicable to the question of which
it treats, and is supported by reason as well as the au-
thorities. *Cobb* v. *Smith*, 38 Wis. 21; *Mayor* v. *Bailey*,
2 Denio, 433; *Gulf etc. Ry.* v. *Pomeroy*, 30 A. & E.
Ry. Cas. 200; 2 Wood's Railways, p. 875.

3. A like objection is urged to the second instruc-
tion, and the conclusion announced disposes of both. Our
attention has been called to nothing in the third instruc-
tion as being erroneous, and we assume that the objection
to it was abandoned.

4. The first of the instructions refused was the con-
verse of the fourth given, and should have been refused.

5. As much of the second, refused, as correctly
stated the law was embraced within the fifth, given.

6. The fourth embodies the vice of the first refused;
and, besides, seems to limit the duty of the defendant
to so constructing its road across watercourses that they
will carry off the water within their banks, but not sur-
face water that had been used to find an outlet through
them. If this is what was intended, it was erroneous.
The statute authorizes the building of the road across
watercourses, but requires that they be restored to their
former state and usefulness (Mansf. Dig. sec. 5447, fifth
paragraph; 2 Wood's Ry. p. 874); and the requirement
is not satisfied if the former capacity of the stream to
carry off water—whether that falling within its banks

3. Duty to provide outlet for surface water.

or that flowing into them from the surface of the adjacent country—is impaired. Upon a somewhat similar contention it was ruled by this court that a railroad could not needlessly obstruct the flow of surface water, and that doing so was objectionable. *Little Rock, etc. R. Co.* v. *Chapman*, 39 Ark. 463.

**4. Measure of damages by overflow.**

7. That brings us to consider the seventh instruction given upon the court's motion—the point of difficulty in the case. Stated generally, it defines as the measure of damages the difference between the values of the land just before and just after the openings were encroached upon, while the defendant insists that the correct measure was the depreciation in the value of its use. The aim of the law is to compensate the actual loss caused by the injury, and the damage should be so measured as to accomplish this end. The rule that leads to that result is correct, and all others are wrong. To determine what the loss is it is necessary to first ascertain the scope of the injury, for nothing can be accounted in the loss that does not arise from the injury. If all damages that may ever result from the nuisance are in law the result of its construction as an original wrong, then everything that is a damage in legal contemplation, whether for past or prospective losses, is recoverable in one action ; but if the wrong be continuing, and the injuries successive, the damage done by each successive injury may be recovered in successive suits, and the injury to be compensated in the original suit is only the damage that has happened. *St. Louis, etc. R. Co.* v. *Biggs*, 52 Ark. 240 ; *C. & O. Canal Co.* v. *Hitchings*, 65 Me. 140 ; *Pinney* v. *Berry*, 61 Mo. 359 ; *Wells* v. *New Haven, etc. Co.* 151 Mass. 46.

The rule for determining whether a damage results from an original or continuing wrong was formulated by Judge Sandels in Biggs' case, above cited, in his usually terse and perspicuous style. He says : "Whenever the

nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original, and may be, at once, fully compensated. * * * But when such structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage that has happened; and there may be as many successive recoveries as there are successive injuries." Upon the facts of that case, that were strikingly similar to those in this, it was held to come within the latter class, and a recovery was allowed for damage caused by overflowing a crop when it would have been barred by limitation if it had been occasioned by the original wrong. Upon the authority of that case, we hold that successive injuries from the wrong complained of in this would not be attributable to the original, but to a continuing, wrong, and that the damage recoverable would be only what had happened when the action was brought.

That brings us to the question, what comprised the damage that had happened? or, stating it as applicable to the objection made to the instruction, was the depreciation in the value of the land, resulting from its liability to overflow, an element of past damage?

In the case of *Pinney* v. *Berry*, 61 Mo. 359, the court considered the correctness of the rule, announced in the instruction under consideration, as applicable to this class of cases; and Judge Napton, for the court, says: "It is obvious that this rule has no application to such nuisances as may be removed the day after the verdict, or for the continuance of which a second or third action may be maintained, or which may be abated at the instance of the injured party, by the order of a competent court. The plaintiff is only entitled to compensation for the loss actually sustained prior to the suit, by the nuisance." The rule approved was that the

damages were the loss to the rental value of the land, not to its salable value as an absolute estate, caused by the nuisance. To the same effect are a number of authorities. *Ballishill* v. *Reed*, 86 Eng. C. L. 696; *Troy* v. *Cheshire R. R.* 3 Foster (N. H.), 83; *Uline* v. *Ry.* 101 N. Y. 98; *Schlitz Brewing Co.* v. *Compton*, 36 C. L. J. 110; S. C. 32 N. E. Rep. 693; *Bare* v. *Hoffman*, 79 Pa. St. 71; 3 Suth. Dam. sec. 1039; 5 A. & E. Enc. L. pp. 16, 17 and note.

It was not claimed in this case that any part of the depreciation arose from damage to the soil; the claim was that the land was liable to be overflowed on account of the insufficient openings in the road-bed, and that this liability depressed its market value. But the depreciation in value is not more permanent than its cause, and as the cause is removable in its nature, and the defendant is under a duty to remove it, a fact dependent upon its permanency cannot be treated in law as established; on the contrary, the presumption should be that the duty will be performed, especially since the continuance of the wrong may give rise to successive recoveries, and at last penal damages be awarded to enforce its performance. 5 Am. & Eng. Enc. p. 16 and cases cited, note 1, p. 17.

If, in this case, the plaintiff should recover for the depreciation claimed, he would be compensated as for a permanent damage to his estate; and if the defendant should then do what it ought to do, abate the nuisance when the fact of nuisance is established, the value of the land would be restored, and the plaintiff would hold it, worth as much as ever, and have also the pay for its permanent damage. It may be that the defendant in good faith disputes the fact of nuisance; if so, justice to it demands that it be permitted to abate the nuisance as soon as the fact is established, and not be held for prospective losses that never happen.

The rule of allowing successive recoveries for successive injuries arising from a continuing wrong obviates such unjust results, and guards all interests of the land owner. Indeed, it is in the interest of the land owner, since it renders possible an assessment of the damage after it is done and can be fully proved, and removes the danger of an inadequate award for want of proof.

We have said much of the depreciation in value of land arising from its liability to overflow; but it does not seem reasonable that there can in fact be any very considerable depreciation from that cause. For as the law furnishes a remedy to prevent damage thereby, and one also to redress it, even to the extent of awarding punitive damages, it cannot greatly depress, even temporarily, the market value of the estate.

As there was no direct injury to the soil in the nature of waste, we think the measure of damages was the injury to the use or depreciation in the rental value of the land; and it follows that the instruction was erroneous. It is argued that, as the same instruction was approved in the case of *St. Louis, etc. R. Co.* v. *Morris*, 35 Ark. 622, it was properly given in this; but the facts of that case brought it within the first class as defined in Biggs' case, the nuisance being permanent and necessarily injurious, and all damages being regarded as original. It appears from the proof in this case that the nuisance was not necessarily permanent, since the road was operated for years free from it; and that if injury to plaintiff's land might reasonably be apprehended, it was not a necessary result of the construction or continuance of the nuisance. Although the instruction was approved in Morris' case, that case is not applicable to this.

For the errors in admitting the improper evidence, and giving the seventh instruction, the judgment is reversed, and the cause remanded.