ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. MORRIS.

Opinion delivered October 14, 1905.

1. LIMITATION—NUISANCE.—Where a thing complained of as a nuisance is not necessarily injurious, but may inflict damage for a while, and then cease, the statute of limitations begins to run from the time the. damage is done, and not before; and there may be as many successive recoveries as there are successive injuries. (Page 545.)

2. SAME—DIVERSION OF SURFACE WATER.—As the injury from wrongfully opening up a ditch whereby surface water is diverted on to plaintiff's land is occasional and dependent upon the rainfall, the statute of limitations commences to run against an action for damages caused thereby from the time the injury was done, and not from the time when the ditch was dug. (Page 548.)

3. DIVERSION OF SURFACE WATER—LIABILITY.—Where defendant. railway company dug a ditch for the purpose of draining its land, and thereby wrongfully diverted the flow of surface water on to plaintiff's land, and other parties, acting independently and without defendant's knowledge, dug lateral ditches, which contributed to injure plaintiff's land, defendant is liable only for its proportion of the damages caused by the ditches. (Page 548.)

4. SAME—MEASURE OF DAMAGE TO CROP.—An instruction that if the jury find that plaintiff sustained damage to his crop by reason of water wrongfully thrown on his land from a ditch constructed by defendant, "the measure of his damages would be the difference between what the land would have otherwise produced and what it did actually produce" is defective in failing to instruct the jury to deduct the. difference between the cost of production of a full crop and of the crop actually produced; and also to deduct on account of the increased damages caused by lateral ditches built without defendant's knowledge. (Page 549.)

5. EVIDENCE—OPINIONS OF NON-EXPERTS.—The opinions of non-expert witnesses as to how plaintiff's land could have been drained, and the overflow of it prevented,. were inadmissible where it did not appear that the facts could not have been so detailed to the jury that they could form their own opinions. (Page 549.)

Appeal from Lonoke Circuit Court.

GEO. M. CHAPLINE, Judge.

Reversed.

*Sam'l H. West* and *Bridges & Wooldridge,* for appellant.

The action is barred by the statute. 62 Ark. 360; 52 Ark. 240; 39 Ark. 463. It was error to instruct that the measure of

damage would be the difference between what the land would have otherwise produced and what it did actually produce. 62 Ark. 364; 56 Ark. 612, and cases there cited. The opinions of non-expert witnesses were inadmissible. 56 Ark. 612.

*J. B. Gray, Thos. C. Trimble, Joe T. Robinson* and *Thos. C. Trimble, Jr.,* for appellees.

Appellant is liable. 39 Ark. 463; 44 Ark. 360; 59 Tex. 128; 54 Ark. 155; 36 L. R. A. 417; 32 L. R. A. 708. The action was not barred; recovery was sought for successive injuries. .56 Ark. 613; 52 Ark. 240; 36 L. R. A. 422-3; 79 Tex. 427.

BATTLE, J. On the 29th day of January, 1903, Lee Morris commenced an action aginst the St. Louis & Southwestern Railway Company to recover the damages he had suffered by reason of a ditch made by the defendant. He alleged in his complaint that the defendant had made, and was at that time maintaining, and had maintained, a ditch by means of which it collected in one channel a large amount of water, diverted it from its natural drainage, and discharged it in a mass upon certain lands of the plaintiff, which otherwise would have flowed in other-directions; that his crops on these lands in the years 1900, 1901 and 1902 were materially injured by the increased flow of water caused by the ditch.

The defendant answered, and denied these allegations, and pleaded the statute of limitations of three years in bar of the action.

The issues in the case were tried by a jury. Evidence was adduced in the trial tending to prove the following facts: Prior to the year 1900, and more than three years before the commencement of this action, the defendant constructed a ditch, about one mile and a quarter or a mile and a half in length, along the east side of its railway, in Lonoke County. The lower end of it was near the land of plaintiff, and was obstructed by a ridge. Lateral ditches leading into and connected with it were dug by other parties without the knowledge or consent of the defendant. These ditches collected a large amount of surface water, diverted it from its natural drainage, and precipitated it upon the land of the plaintiff, and damaged his cotton crops growing thereon. This occurred in the years 1900 and 1901 and 1902. In each of these years thirty five or forty acres of plaintiff's land were over-

flowed. This land was planted in cotton, which was injured by the water thrown on it about one half. Other lands adjoining, and of the same quality, produced in the same years three-fourths of a bale for each acre. In this time the average price of cotton in the seed was two and a half cents a pound, and from 1800 to 2000 pounds of seed cotton made a bale. The cost of the production and gathering is not shown by the evidence.

During the progress of the trial witnesses who were not shown to be experts were allowed to testify, over the objections of the defendant, that plaintiff's land could have been drained and the overflow of it prevented by extending the ditch, made by the defendant, through a certain ridge.

The court instructed the jury, over defendant's objections, as follows: "You are instructed that if you find from the evidence that the plaintiff sustained any damage to his crops by reason of water being thrown on said land from a ditch constructed by the defendant railroad company, not into a channel, or live stream sufficient to carry off same, then the measure of his damages would be the difference between what the land would have otherwise produced and what it did actually produce." And refused to instruct them, at the request of the defendant, as follows:

"If the land of plaintiff has sustained damage by reason of a ditch dug by defendant, his cause of action accrued when the ditch was dug; and if it appears from the evidence that the ditches were dug more than three years before the filing of this suit, the jury will find for the defendant as to any damage to the land of plaintiff.

"The jury are instructed that, although they may find from the evidence that the defendant, in the construction of its road, excavated a ditch on its own right of way along the east side of its track, through which water at certain seasons of the year is discharged and carried upon the lands of the plaintiff, the defendant is not liable for damages on account of any water that may be brought into such ditch and discharged upon the land of plaintiff by artificial ditches extending into said railroad ditch and made without consent of defendant.

"The defendant is only liable to the plaintiff for such damages as may ensue from its own acts or the acts of its agents, and if the jury should further believe that the water from the adjoining

lands have been conducted into such railroad ditch by artificial ditches made without the consent of the defendant, thereby increasing the flow of water through said ditch upon plaintiff's land, the defendant is not liable to the plaintiff for damages caused by water artificially brought into its ditch from adjoining lands without its consent, and the burden of showing that the railroad consented to such ditches being put into its right of way, and ditches hereon, rests upon plaintiff; and without evidence on that issue you will find for defendant."

The plaintiff recovered a verdict and judgment for $430, and the defendant appealed.

It is first insisted by appellant that this action is barred by the statute of limitations, because it was not brought within three years after the ditch was completed. Does it come within the rule which provides that actions for injuries caused by nuisances of permanent character shall be brought within three years after the construction of the nuisance? In *St. Louis, I. M. & S. Ry. Co.* v. *Biggs,* 52 Ark. 240, the rule is stated as follows: "Whenever the nuisance is of a permanent character, and its construction and continuance are *necessarily* an injury, the damage is original, and may be at once fully compensated. In such case the statute of limitations begins to run upon the construction of the nuisance. * * * But when such structure is permanent in its character, and its construction and continuance are *not necessarily* injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries. In such case the statute of limitations begins to run from the happening of the injury complained of."

*St. Louis, I. M. & S. Ry. Co.* v. *Biggs, supra,* was an action to recover damages sustained in 1885 on account of the destruction of plaintiff's levees, fences, and crops by an overflow alleged to have resulted from the negligent construction and maintenance of a railway embankment through the Red River bottom in 1873, without sufficient openings to permit the passage of water. The defendant pleaded the statute of limitation of three years in bar of the action. The railroad embankment was constructed in 1873. The Red River "bottoms," including the plaintiff's land, which was situated therein, was overflowed in

1876 and 1885. By reason of insufficient openings in the railway embankment, the water in cases of unusual overflow was impeded, and rose higher, and remained longer upon plaintiff's land than it had formerly done. In 1885 plaintiff's crops were destroyed, and her levee broken by water dammed by the embankment upon her land. This court held that that case could be brought within three years after the happening of the injury. That case, to some extent, explained the rule as laid down by the court.

*Railway Company* v. *Yarborough,* 56 Ark. 612, was an action similar to *St. Louis, I. M. & S. Ry. Co.* v. *Biggs,* 52 Ark. 240, and was against the same defendant. Floods came, and, because the openings in the railway embankment were not sufficient to permit their passage, overflowed the plaintiff's land, and destroyed his crops. This court said: "The damage which the plaintiff sued to recover was not original in the sense that it necessarily resulted from the erection of the railway embankment. But after that structure was completed the injury complained of was still entirely uncertain and contingent, and such as might never happen. In this respect the case is similar to that of the *St. Louis, I. M. & S. Ry. Co.* v. *Biggs,* 52 Ark. 240; and, according to the rule there laid down, the statute of limitation did not begin to run until the crops were destroyed."

*Railway Co.* v. *Cook,* 57 Ark. 387, was an action for injuries to land "alleged to have resulted from the negligent manner in which the defendant changed the structure of its roadbed. It was alleged that the defendant originally constructed its road with sufficient openings, but that in the fall of 1889 it made a change, substituting a solid embankment for a trestle, and thereby encroached upon the channel of Cache River and adjacent sloughs, so as to obstruct the flow of water through them, and cause it to flow back on plaintiff's land; that during the following winter his land was by this means overflowed, and the planting of a crop that year prevented; and that the market value of the land was destroyed by reason of the liability to overflow." According to the contention of the plaintiff in that case all the damage sustained by the plaintiff was the result of an original wrong, was original, and was recoverable in one action. But this court did not sustain that contention. The court said: "The

aim of the law is to compensate the actual loss caused by the injury, and the damage should be so measured as to accomplish this end. * * * To determine what the loss is, it is necessary to first ascertain the scope of the injury, for nothing can be accounted in the loss that does not arise from the injury. If all damages that may ever result from the nuisance are in law the result of its construction as an original wrong, then everything that is a damage, in legal comtemplation, whether for past or prospective losses, is recoverable in one action; but if the wrong be continuing, and the injuries successive, the damage done by each successive injury may be recovered in successive suits, and the injury to be compensated in the original suit is only the damage that has happened."

After saying that "the rule for determining whether a wrong results from an original or continuing wrong was formulated" in *St. Louis, I. M. & S. Ry. Co.* v. *Biggs, supra,* and stating the rule as there laid down, it further said: "Upon the facts of that case * * * it was held to come within the latter class, and a recovery was allowed for damage caused by overflowing a crop when it would have been barred by limitation if it had been occasioned by the original wrong. Upon the authority of that case, we hold that successive injuries from the wrong complained of in this would not be attributable to the original, but to a continuing, wrong, and that the damage recoverable would be only what had happened when the action was brought." According to the doctrine in the Cook case the statute of limitation commenced running when the damage in that case was done.

In *St. Louis, I. M. & S. Ry. Co.* v. *Stephens,* 72 Ark. 127, the court followed the rule as laid down and construed, in *St. Louis, I. M. & S. Ry. Co.* v. *Biggs,* 52 Ark. 240, and *Railway Co.* v. *Yarborough,* 56 Ark. 612; the facts in the cases being similar.

Wood on Limitations (3 Ed., § 180), says: "But while this is the rule as to nuisances of a transient rather than of a permanent character, yet, when the original nuisance is of a permanent character, so that the damage inflicted thereby is of a permanent character, *and goes to the destruction of the estate thereby, or will be likely to continue for an indefinite period, and*

*during its existence deprive the landowner of any beneficial use of that portion of his estate,* a recovery not only may but must be had for the entire damage in one action, as the damage is deemed to be original; and as the entire damage accrues from the time the nuisance is created, and only one recovery can be had, the statute of limitations begins to run from the time of its erection against the owner of the estate or estates affected thereby."

According to the cases and authority cited, in cases where the nuisance is not necessarily injurious, but may or may not be so, and if it proves to be injurious, the injury continues for a while, inflicts damage, and then entirely ceases, the statute of limitations begins to run from the time the damage is done, and not before; and there may be as many successive recoveries as there are successive injuries, and the statute of limitation runs from the time each of such injuries occurs. Under a different rule the injured owner might not be able to obtain adequate compensation.

In the case before us the ditch was of uncertain duration. It was obstructed at the lower end by a ridge, and, unless kept open by human labor, would fill up by the soil, leaves of trees, vegetation growing therein, and other things washed and deposited therein by rains and other causes. Like the embankments of railroads, with insufficient openings, in the valley of a river, the injurious effects it may produce depended upon the seasons, the rains, and the floods, and when they ceased it ceased to inflict injury. So the statute of limitation runs against actions for damages caused thereby from the time the injury was done, and not from the time when the ditch was completed.

It appears that only a part of the surface water which caused the damage complained of came from the land drained by the appellant's ditch, but that other water was conveyed into the ditch by lateral ditches dug by other parties, and that they contributed to appellee's injury. Witnesses testify that the appellant in no way aided in the construction of the lateral ditches, or had anything to do with them. It does not appear that they were connected with the appellant's ditch with its knowledge or consent. Appellant insists that it was done without its knowledge or authority, and that the evidence so shows. If this be

true, the appellant, if liable at all, would be liable for its proportion of the damages caused by the overflow produced by the ditches. *Sloggy* v. *Dilworth,* 38 Minn. 179, s. c. 8 American State Reports, 656; *Sellick* v. *Hall,* 47 Conn. 269, 273.

The court instructed the jury that, if they found from the evidence that plaintiff sustained any damage to his crops by reason of water thrown on his land from a ditch constructed by appellant, "the measure of his damages would be the difference between what the land would have otherwise produced and what it did actually produce." This instruction is defective in failing to instruct the jury to allow or deduct the difference between the cost of production and gathering and baling of a full crop of cotton and the crop actually produced. The cost of gathering and baling was certainly less, and the cost of production might have been less, but that does not appear. It also failed to instruct the jury to make any reduction on account of the increased overflow caused by the lateral ditches, although they found that they were connected with the railroad ditch without the knowledge, consent or sanction of the appellant, and notwithstanding the appellant asked for an instruction upon that point. The court erred in giving the instructions as it did.

The opinion of the witnesses, who were not experts, as to how appellee's land could have been drained and the overflow of it prevented was inadmissible. They should have stated what was necessary to show that fact, if they knew, and left the jury to judge for themselves, unless it could not have been sufficiently shown without the opinion. "For if it was practicable for them to detail to the jury the facts within their knowledge as fully and perfectly as they had observed them, then the jury should have been left free to draw their own conclusions, and their opinions were inadmissible." *Railway Co.* v. *Yarborough,* 56 Ark. 612, 617.

For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.