## CHICAGO, R. I. & P. RY. CO. v. DAVIS.

### No. 2201.  Opinion Filed May 10, 1910.

#### (109 Pac. 214.)

1. **WATERS AND WATER COURSES—Construction of Roadbed— Overflowing Lands.** If a railroad company so constructs its roadbed and ditches as to divert surface water from its usual and ordinary course, and by its ditches or artificial channels causes such water to be conveyed to a particular place and thereby overflows the land of another proprietor, which before the construction of such road, ditches or channels did not overflow, the company will be liable to such proprietor for the injury.

2. **SAME.** Whether the ditches or artificial channels be constructed on the right of way at the time of the construction of the road as a part thereof or afterwards in the operation or maintenance of the same is immaterial.

3. **WATERS AND WATER COURSES—Judgment — Overflowing Lands—Recovery for Injuries—Conclusiveness.** Where the wrong is of a permanent nature and continuous, springing from the manner in which the ditch or channel is completed, on account of the diversion of surface water, the land of the abutting proprietor necessarily being injured by such diverted water, such proprietor may treat the act of the railway company as a permanent injury and recover his damages in the consequent depreciation of the value of his property, and in such case the recovery of the damage results in a consent on the part of such proprietor to such manner of maintaining such ditch or channel, concluding both him and any subsequent owner of such land.

(Syllabus by the Court.

*Error from District Court, Comanche County; F. E. Gillette, Judge.*

Action by D. E. Davis against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. C. Stevens, C. O. Blake, H. B. Low,* and *T. R. Beman,* for plaintiff in error.—Citing: *Railroad Co. v. Riley,* 33 Kan. 374: *Railway Co. v. Renfrow* (Kan.) 34 Pac. 802; *Walker v. Railroad*

Co., 165 U. S. 593; Cox v. Railway Co., 174 Mo. 588; Hagge v. Railway Co., 104 Fed. 391; Hannaher v. Railroad Co., 37 N. W. 717; Railroad Co. v. Speelman, 12 Ind. App. 372; Railroad Co. v. Hammer, 22 Kan. 763; Bryant v. Merritt (Kan.) 80 Pac. 600; Morrison v. Railroad Co., 67 Me. 353; Gannon v. Hargadon, 92 Mass. 106; Werner v. Popp (Minn.) 102 N. W. 366; Railroad Co. v. Davis, 73 Miss. 678; Benson v. Railroad Co., 78 Mo. 504; Morrissey v. Railroad Co., 38 Neb. 406; Sullivan v. Browning (N. J.) 58 Atl. 302; O'Connor v. Railway Co., 52 Wis. 526; Clauson v. Railway Co. (Wis.) 82 N. W. 146; 3 Suth. Damages, sec. 1046; Gould on Waters, sec. 416; Sherlock v. Railway Co., 115 Ind. 22, 17 N. E. 171; Water Co. v. Dickover, 46 N. E. 591; Railway Company v. Cline, 63 N. E. 483; City of Nashville v. Comar, 12 S. W. 1027; Uline v. Railroad Company, 4 N. E. 536; R. R. Company v. Biggs, 12 S. W. 331; Hargreaves v. Kimberly, 57 Am. Rep. 121; Town of Troy v. Chesire R. Co., 55 Am. Dec. 175.

B. M. Parmenter, C. M. Myers, and C. O. Clark, for defendant in error.—Citing: Davis v. Fry (Okla.) 78 Pac. 180; Pye v. City of Mantako, 1 Am. St. Rep. 673; Railroad Co. v. Lackey, 48 Am. St. Rep. 590; Mayor v. Sykes, 94 Ga. 30; Railroad Co. v. Wachter, 123 Ill. 440; Railroad Co. v. Anderson, 79 Tex. 427; Abbott v. Railroad Co., 53 Am. St. Rep. 588; Sullins v. Railroad Co. (Iowa) 7 Am. St. Rep. 503; Railway Co. v. Marley (Neb.) 13 Am. St. Rep. 483; 2 Current Law, 2043.

WILLIAMS, J. In the case of C., R. I. & P. Ry. Co., Plaintiff in Error, v. H. C. Johnson, Defendant in Error, 25 Okla. 760, 107 Pac. 662, it was held:

"If a railroad company so constructs its roadbed and ditches as to divert surface water from its usual and ordinary course and by its ditches or artificial channels, causes such water to be conveyed to a particular place, and thereby overflows the land of another proprietor which, before the construction of such road, ditches, or channels, did not overflow, the company will be liable to such proprietor for the injury."

It was there also held to be immaterial "whether the ditches

or artificial channels be constructed or made on the right of way at the time of the construction of the road as a part thereof or afterwards in the maintenance and operation of the same." Further, in this, as in the Johnson Case, the court instructed the jury that it was incumbent upon the plaintiff to show by preponderance of the evidence that the defendant by such ditch *unnecessarily* turned surface waters upon plaintiff's land in *unnecessarily* large quantities to plaintiff's damage and injury, in order to have a recovery against the defendant.

In addition to the cases cited in that case, we further call attention to the following cases: In *Ostrom v. Sills,* 24 Ontario Appeals, 526, the court said:

"The doctrine of the civil law has not been adopted by the courts of this province. As regards mere surface water precipitated from the clouds in the form of rain or snow, it has been determined that no right of drainage exists *jure naturae,* and that, as long as surface water is not found flowing in a defined channel with visible edges or banks approaching one another and confining the water therein, the lower proprietor owes no servitude to the upper to receive the natural drainage. * * * Generally speaking, the upper proprietor may dispose of the surface water upon his land as he may see fit, but he cannot, by artificial drains or ditches, collect it or the water of stagnant pools or ponds upon his premises, and cast it in a body upon the proprietor below him to his injury. He cannot collect and concentrate such waters and pour them through an artificial ditch in unusual quantities upon his adjacent proprietor."

In *Young v. Tucker,* 26 Ontario Appeals, 169, the court said:

"The right of the defendant to drain his land by ditches is undoubted, but with this right is the correlative obligation to so construct them as to conduct the water which may be carried thereby to a proper and sufficient outlet, so that the water which may be discharged therefrom will do no injury to other proprietors. Anything short of this must, I think, be regarded as negligence for which the defendant would be answerable. The governing principle in cases such as this is that one cannot prevent injury to his own property by transferring that injury to his neighbor's property."

The case of *Whalley v. Lancashire & Yorkshire R. W. Co.* (1884) 13 Q. B. D. 131, which is cited in the Johnson Case, is also quoted at length with approval by the court in *Young v. Tucker, supra.*

In *Savannah, A. & M. Ry. v. Buford,* 106 Ala. 303, 17 South. 395, Chief Justice Brickell, in speaking for the court, said:

"The wrong intended to be guarded against is the diversion of water, causing it to flow upon the lands of another, without his will, which did not naturally flow there; and it is not deemed material whether the water is diverted from a running stream, or is surface water caused to flow where it did not flow before. *Farris v. Dudley,* 78 Ala. 124 [56 Am. Rep. 24]; *Crabtree v. Baker,* 75 Ala. 91 [51 Am. Rep. 424]; *Nininger v. Norwood,* 72 Ala. 277 [47 Am. Rep. 412]; *Hughes v. Anderson,* 68 Ala. 280 [44 Am. Rep. 147]; *Mayor v. Jones,* 58 Ala. 654; *Mayor v. Coleman,* 58 Ala. 570; *City Council v. Gilmer,* 33 Ala. 116 [70 Am. Dec. 562]. In *Hughes v. Anderson, supra,* it was said by Stone, J., after a statement of the general doctrine as we have expressed it, that it could not be 'enforced, in the strict letter, without impeding agricultural progress, and without hindering industrial enterprises. Hence, minor, individual interest is sometimes made to yield to a large and paramount good.' But in this connection he further observed: 'This, however, must be weighed and decided with a proper reference to the value and necessity of the improvement of the superior heritage, contrasted with the injury to the inferior, and even this license must be conceded with great caution and prudence.' This case does not involve a discussion or consideration of this limitation of the general doctrine; for it is settled by the current and weight of authority that a railroad company has not more right to obstruct the natural flow of water by an embankment, or other artificial means, or by the collection of it into an artificial channel , forcing or conducting it to a discharge upon the lands of another, than it has, in the same way, to dispose of water from water courses, and it is liable for the resulting damage in the one case as in the other. *Waterman v. Railroad Co.,* 30 Vt. 610 [73 Am. Dec. 326]; *Railroad Co. v. Morrison,* 71 Ill. 616; *Railroad Co. v. Cox,* 91 Ill. 500; *Railroad Co. v. Hays,* 11 Lea [Tenn.] 382, 47 Am. Rep. 291; *Railroad Co. v. Davis,* 68 Md. 281 [11 Atl. 822], 6 Am. St. Rep. 440; [*Austin & N. W. Ry. Co.*

*v. Anderson*, 79 Tex. 427] 15 S. W. 484 [23 Am. St. Rep. 350];
*Railway Co. v. Mossman*, 90 Tenn. 157 [16 S. W. 64] 25 Am. St.
Rep. 670."

See, also, *Ala. Great South. R. Co. v. Prouty*, 149 Ala. 71,
43 South. 354.

In *G., C. & S. F. Ry. Co. v. Helsley*, 62 Tex. 596, the court
said:

"Even by courts which follow what is considered the common-
law rule, if surface water is collected into artificial channels and
thereby in increased quantities thrown upon the land of another,
the person who causes this to be done will be liable for such injury
as results."

In *Kelley et al. v. Kansas City Southern R. Co.* (Ark.) 128
S. W. 664, the court said:

"If a railroad company attempts to alter the course of the
natural drainage of a tract of land, it must provide sufficient
means for the escape of the flow of such water. If the railroad
company attempts to gather up the water into ditches, it is bound
to care for it so that it will not do an injury to an abutting owner."

The question as to the recovery of prospective losses also
arises. In *St. L., I. M. & S. R. Co. v. Biggs*, 52 Ark. 240, 12
S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174, the late Judge
Sandels, in speaking for the court, said:

"The rules applicable to the recovery of damages for the
construction and continuance of nuisances in cases of this kind
are stated satisfactorily to this court by numerous authorities, as
follows: Whenever the nuisance is of a permanent character and
its construction and continuance are *necessarily* an injury, the dam-
age is original, and may be, at once, fully compensated. In such
case, the statute of limitations begins to run upon the construc-
tion of the nuisance. * * * But, when such structure is per-
manent in its character, and its construction and continuance are
*not necessarily* injurious, but may or may not be so, the injury
to be compensated in a suit is only the damage which has hap-
pened; and there may be as many successive recoveries as there
are successive injuries."

In *Railway Company v. Cook*, 57 Ark. 387, 21 S. W. 1066,
the court said:

"If all damages that may ever result from the nuisance are in law the result of its construction as an original wrong, then everything that is a damage in legal contemplation, whether for past or prospective losses, is recoverable in one action; but if the wrong be continuing, and the injuries successive, the damage done by each successive injury may be recovered in successive suits, and the injury to be compensated in the original suit is only the damage that has happened."

In *St. L. Southwestern Ry. Co. v. Morris,* 76 Ark. 542, 89 S. W. 846, the court said:

"Wood on Limitations (3d Ed. 180) says: 'But while this is the rule as to nuisances of transient rather than of a permanent character, yet, when the original nuisance is of a permanent character, so that the damage inflicted thereby is of a permanent character, *and goes to the destruction of the estate thereby, or will be likely to continue for an indefinite period, and during its existence deprived the landowner of any beneficial use of that portion of his estate,* a recovery not only may, but is, deemed to be original; and as the entire damage accrues from the time the nuisance is created, and only one recovery may be had, the statute of limitations begins to run from the time of its erection against the owner of the estate or estates affected thereby.' "

This rule has been repeatedly followed and applied according to the facts in each case by the Supreme Court of Arkansas. *St. L., I. M. & S. R. Co. v. Yarborough,* 56 Ark. 612, 20 S. W. 515; *St. Louis, I. M. & S. R. Co. v. Anderson,* 62 Ark. 360, 35 S. W. 791; *St. Louis, I. M. & S. R. Co. v. Stephens,* 72 Ark. 127, 78 S. W. 766; *St. Louis Southwestern R. Co. v. Morris,* 76 Ark. 542, 89 S. W. 846; *Chicago, R. I. & P. Ry. Co. v. McCutchen,* 80 Ark. 235, 96 S. W. 1054; *St. Louis, I. M. & S. R. Co. v. Hoshall,* 82 Ark. 387, 102 S. W. 207; *Turner v. Overton et al.,* 86 Ark. 406, 111 S. W. 270, 20 L. R. A. (N. S.) 894. The Supreme Court of Alabama is in harmony with Arkansas on this question. In *Savannah, A. & M. Ry. v. Buford, supra,* the court said:

"The roadbed and embankment are permanent and continuous structures; and if their erection had given the plaintiff a cause of

action, and then all the damages which could have resulted had resulted, the statute of limitations would have commenced to run from the time of their completion. But if the thing complained of is not necessarily injurious, or is not an invasion of the rights of another, of itself affording no cause of action, then whatever of legal injury may result from it furnishes a cause of action accruing when the injury occurs, and then the statute of limitations commences to run, and there may be as many successive suits and recoveries as there are successive injuries."

See, also, *Polly v. McCall,* 37 Ala. 20; *Powers v. Council Bluffs,* 45 Iowa, 652, 24 Am. Rep. 795; *Town of Troy v. Cheshire R. Co.,* 23 N. H. 103, 55 Am. Dec. 177; *C. & E. I. R. R. Co. v. McAuley,* 121 Ill. 164, 11 N. E. 67; *Baker v. Leka,* 48 Ill. App. 358; *L. & N. R. Co. v. Cornelius,* 111 Ky. 752, 64 S. W. 732; *L. & N. R. Co. v. Orr,* 91 Ky. 109, 15 S. W. 8; *Central Branch U. P. R. Co. v. Twine,* 23 Kan. 585, 33 Am. Rep. 203; *Fremont, E. & M. V. R. Co. v. Harlin,* 50 Neb. 698, 70 N. W. 263, 36 L. R. A. 417, 61 Am. St. Rep. 578; *Watts v. Norfolk & Western Ry. Co.,* 39 W. Va. 196, 19 S. E. 521, 23 L. R. A. 674, 45 Am. St. Rep. 894; *Austin & N. W. Ry. Co. v. Anderson,* 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350; *G., C. & S. F. R. Co. v. Helsley,* 62 Tex. 593.

The instructions as to compensation for damages seem to be in accord with the rule announced by Judge Sandels in the Biggs Case, and to be in harmony with the weight of authority.

It follows that the judgment of the lower court must be affirmed.

DUNN, C. J., and HAYES and TURNER, JJ., concur; KANE, J., dissents.