BARNETT, Appellant, v. ST. FRANCIS LEVEE DISTRICT, Respondent.

St. Louis Court of Appeals, May 14, 1907.

1. **PRACTICE: Jurors: Disqualification by Opinion Formed.** Jurors were disqualified to sit where they showed on their *voir dire* examination that they heard all the testimony in another case involving the same issues and the same state of facts and had formed an opinion regarding its merits, although they thought they could try the case impartially.

2. **STATUTE OF LIMITATIONS: Waters and Watercourses.** Where the owner of land was damaged by an overflow of his premises caused by the negligent construction of a levee, his cause of action accrued so as to set in motion the Statute of Limitations when the injury was inflicted and not when the dam was built.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*C. G. Shepard* for appellant.

The court erred in overruling plaintiff's objections to the competency of Mike Stevens and Elias Nunn, to hear and try this cause. Bilmeyer v. Transit Co., 108 Mo. App. 6; State v. Fullerton, 90 Mo. App. 411.

*Faris & Oliver* for respondent.

(a) Appellant complains that his challenges for cause of jurors Stevens and Nunn should have been sustained. The juror Stevens had heard a case tried between another person and this defendant. At this trial he was merely a spectator—was not a witness nor a juror in that case. From what he had heard he had formed an opinion in that former case. The juror further stated that his hearing of the other case had not the effect of fixing his mind upon the one side or the other so as to prevent his trying this case fairly and impartially, and that he thought he could so try this case. (b) The same may be said as to the juror Nunn. The challenge as to Nunn was insufficient and not specific. It is not enough to say "challenged for cause," but specific objections must be made. State v. Miles, 98 S. W. 25; State v. M'cCarver, 194 Mo. 737; State v. McGinnis, 158 Mo. 105.

GOODE, J.—Plaintiff owns a farm on the shore of Half Moon lake in Pemiscot county. The outlet of the lake is Taylor bayou, a natural watercourse with well-defined channel and banks, through which the surplus waters of the lake formerly flowed into the Mississippi river. In 1893, the defendant, acting under statutory authority, built a levee to hold back the overflow waters of the Mississippi from the territory which previously had been frequently submerged. The levee was built as a solid dirt embankment across Taylor bayou, a short distance from the lake and obstructed the drainage of the lake. The channel of the bayou, which was from forty to sixty feet wide and ten to fifteen feet deep, gradually choked with debris between the levee and the lake, thereby impeding the outlet of the waters still more. The testimony for the plaintiff goes to show that an overflow gate, or some other device, could have been put in the levee for the water from the lake to flow through and

thus sufficient drainage afforded to prevent the overflow of plaintiff's land during freshets.　For the defendant there was evidence that such a construction was impossible and that the only mode in which the levee could be made effective was by building it as a solid embankment. In the spring of 1903, a considerable portion of Pemiscot county was flooded by an extraordinary rise of the waters of the Mississippi river and the giving way of the levee in places.　Part of plaintiff's farm was submerged during that year, preventing him from cultivating the land and washing away some of his fencing.　There is a conflict in the evidence as to the cause of this overflow. The testimony introduced by plaintiff was that it was due to surface water flowing into Half Moon lake during rains and being retained there by the levee; whereas the testimony for the defendant tended to prove it was caused by the flood waters of the Mississippi river escaping through a break in the levee and running behind it into Half Moon lake.　This action was instituted to recover for damage caused by the overflow, on averments that the levee was improperly, negligently and unskillfully constructed, in that it was built as a solid bank of earth across the bayou, instead of having a flood gate for drainage purposes, or some other suitable contrivance to enable the surrounding land, including plaintiff's farm, which previously had been drained by the bayou, to be drained still.　The answer denied any negligence in the building of the levee, and alleged that any other mode of construction was impracticable and that the damage done to plaintiff's farm was not due to the improper performance of any duty imposed by law on the defendant.　It is further said by way of defense, that the spring of 1903 was marked by excessive rainfall, a long continued stage of high water and floods in the Mississippi river; that plaintiff's land was situate in low and swampy ground and adjacent to a series of shallow lakes and sloughs; that the waters of the Mississippi escaped into

said low ground, covering the same. This overflow of the river is said to have occurred twice during the year 1903; to-wit, during March and June. It is alleged that the 1st flood would have overflowed plaintiff's farm even if no levee had been constructed across Taylor Bayou, and that the embankment in reality protected plaintiff's land, in some measure, by holding back the water of the river. It is denied that any damage suffered by plaintiff was due to unskillful construction of the levee. A verdict was returned for the defendant and plaintiff appealed.

Though several errors are assigned in rulings on the admission of evidence, they appear not to be well taken. But the judgment must be reversed because of the overruling of plaintiff's challenge of two jurors for cause. These men had listened to the trial of a case by another plaintiff against the defendant involving the same issues presented in the present case. Both plaintiffs lived on Half Moon lake and in their petitions each complained of the overflow of his farm during the season of 1903, because of the obstruction of Taylor bayou, and the consequent backing up of the waters of Half Moon lake. Two veniremen testified on their *voir dire* examination that they had listened to all the testimony in the other case and had formed an opinion regarding its merits. It is true they said they thought they could try this case impartially and according to the evidence. But plainly they had prejudged the issues they were to determine in the strictest sense of the term; had formed an opinion on the issues by listening to all the testimony on which the present case would be tried. [Hunt v. Columbia, 122 Mo. App. 31, 97 S. W. 955; State v. Foley, 144 Mo. 600, 46 S. W. 733; State v. Fullerton, 90 Mo. App. 411.] Counsel for defendant insist that when plaintiff's counsel challenged the competency of the two veniremen, the court had before it nothing to show this case was identical with the one the jurors had heard, except the state-

ment of counsel, and it was incumbent on plaintiff to show that the issues in the two cases were the same. We would accept this proposition but for the fact that the *voir dire* examination shows the court took it for granted the two causes were alike and involved the same issues and felt justified in overruling the challenges because the jurors said that though they had formed an opinion regarding the issues, they thought their conclusions were not so fixed that it would be impossible for them to try this cause impartially. An opinion once formed from listening to the testimony in a cause cannot, presumably, be removed or altered except on proof of a different state of facts. The verdict in this case was signed by nine of the jurors, and it appears that one of the veniremen who had formed an opinion from hearing the other case, joined in a verdict adverse to the plaintiff. Therefore we think the court erred in a manner which turned out to the prejudice of plaintiff in not sustaining his challenges.

It is insisted for the defendant that on the undisputed evidence the Statute of Limitations has barred plaintiff's action, inasmuch as the levee was built in 1893 and this action was not instituted until 1903. The five-year Statute of Limitations was interposed as a defense. It should be borne in mind that the present action is not for an injury necessarily entailed by the construction of the levee in a proper manner, and the question of whether an action for damage thus caused would be barred, is not before us. The gravamen of this case is the negligent and unskillful construction of the levee, resulting in damage to plaintiff, when if it had been properly constructed, said damage would not have resulted. Such facts raise a cause of action. [Note to Van Pelt v. City of Davenport, 20 Am. Rep. 622.] The point to be decided is, when the cause of action accrued; that is to say, whether plaintiff was bound to sue within a limited pe-

riod after the levee was built across the bayou, or whether the limitation began to run from the occurrence of damage. It is not shown that any previous flooding of the farm had occurred and, indeed, the evidence very strongly goes to prove that the overflow counted on was due, not to the damming up of the bayou by the levee, but to a crevasse forming in the levee at a distant point, through which water from the Mississippi burst upon the surrounding country. But the evidence is not all that way, and an issue of fact was raised for the jury as to what caused the flooding of plaintiff's farm. It is true the levee was a solid and permanent structure; yet it would not necessarily cause the overflow of plaintiff's land so that the injury for which he sues could have been anticipated from the first. This injury was not original but consequential. When the facts of a case are as stated it has been generally, if not universally, held the cause of action accrues on the happening of damage and the statute then begins to run. [19 Am. & Eng. Ency. Law, pp. 200, 201.] This rule has been often applied when no special statute regulated the matter of actions for damages caused by damming watercourses and thereby overflowing adjacent lands. [3 Farnham, Waters, p. 2646, sec. 903c; Wood, Limitations (3 Ed.), sec. 180; Culver v. Railroad, 38 Mo. App. 130; Bunten v. Railroad, 50 Mo. App. 414; Hempsted v. Cargill, 46 Minn. 118; Prentiss v. Wood, 132 Mass. 486; Railroad v. Andreesen, 62 Neb. 456; Railroad v. Hay Co., 149 Ind. 344; Union Trust Co. v. Cuppy, 26 Kas. 754; Del. Canal Co. v. Wright, 26 N. J. L. 469; Roberts v. Reed, 16 East. 215.] In King v. United States, 59 Fed. 9, it appeared the plaintiff's farm had been overflowed in consequence of a dam built by the Federal government pursuant to law, across the channel of the Savannah river. The full extent of the injury inflicted by the dam was not apparent for several years after its erection, and it was held the statute began to run against the plaintiff's cause of

action when the injury became complete.  According to that authority, even if the structure complained of is both lawful and properly built, but results in damage of a consequential character and not inevitable, the injured party has a cause of action and it accrues and the statute begins to run when the damage happens.

It is said that more than ten years having elapsed since the construction of the levee, defendant had acquired a prescriptive right as against plaintiff.  If his land had been overflowed continuously, in consequence of the erection of the levee, this point would deserve attention; but the facts do not show a continuous, or even a periodical overflow, and we are of the opinion that the maintenance of the levee constituted no defense. [Wood, Limitations (3 Ed.), secs. 181, 182; Backhouse v. Bonomi, 9 H. L. Cas. 503; Whitehouse v. Fellowes, 9 C. B. N. S. 901, s. c. 10 Id. 705; Flight v. Thomas, 10 Ad. & El. 590; Polly v. McCall, 37 Ala. 20; Richardson v. Pond, 15 Gray 387.]

For the errors noted, the judgment is reversed and the cause remanded.  All concur.