**ATCHISON, T. & S. F. RY. CO. v. HADLEY.**

No. 21903.    June 5, 1934.

Rehearing Denied Sept. 11, 1934.

Rainey, Flynn, Green & Anderson, for plaintiff in error.

Lillard & Wheeling, for defendant in error.

PER CURIAM. Plaintiff filed his action against the defendant company September 25, 1929, and in his petition substantially alleged he was the owner of 36 acres of land on the north bank of the South Canadian river where defendant's railway crosses on a bridge immediately west of said land, and that defendant had erected and maintained along the south bank and west of the bridge a dike or embankment which is permanent in character, thereby changing the channel and flow of water out of their natural course and direction, over and across plaintiff's land, which was done by the defendant negligently, carelessly, and unlawfully, and with full knowledge of the subsequent consequences. That, as a result of said deflection of the natural flow over his land, the same has been washed away to the extent of 14 acres since August 20, 1929. That the land was worth $200 per acre, and he has been damaged $2,800, for which he prays judgment.

The defendant answered, denying generally the allegations of the petition; and alleging that its railway adjacent to plaintiff's land was built in 1895; that sometime in 1904 or 1905 it constructed a dike of rock and other materials on the south bank of the river in order to keep it within its banks; that in 1903 it overflowed its banks and the south bank at a point where a stone dike was afterwards built; that such dike has been maintained there for many years prior to and at the time of the overflows alleged, and since that time; that it does not obstruct the natural flow of the stream and was constructed only to control the same in times of flood, and prevent it from making a new channel and leaving defendant's bridge upon dry land; that the dike had been constructed in 1904 before plaintiff acquired his lands in 1928; that he was aware of the conditions existing when he bought the land and that his action is barred by the statute of limitations. Defendant further alleges that the bed of the river is made up of quicksand and silt and is dry during most of the year; that the same is wide and without any channel or banks, is migratory by nature, and frequently changes its course without any apparent reason or cause; and that if plaintiff suffered any damages, they were caused by the nature of the soil and stream and conditions over which the defendant had no control.

For his reply plaintiff admits he acquired the lands in May, 1928, and denies that his cause of action is barred by the statute of limitations, and all allegations of new matter in the answer.

A jury was waived and the trial was to the court. Judgment was in favor of the plaintiff for the destruction of ten acres of land worth $150 per acre, a total of $1,500. Motion for new trial was overruled, the defendant appealed, and the case is now before this court for review.

From the evidence it appears that the plaintiff is the legal owner of the land described in his petition; that at the time he acquired it in August, 1929, it contained approximately 36 acres, about ten acres thereof have been eroded by the waters of the river flowing against it, and that the

value of what was washed away is $150 per acre, or $1,500 in all.

That near the west line of his property defendant's railway crosses the river, and on the south bank and just west of the bridge it, in 1896, erected a certain dike or embankment to protect the south approach; that in 1904 high waters washed a part of it away, and in 1906, the defendant rebuilt the dike or embankment and extended it some 3,700 feet southwesterly along the south bank west of the bridge; that prior to the erection of the dike or embankment the waters flowing in the river at times of flood had a natural tendency to overflow and erode the south bank at the place where the bridge crosses the river, and that since it has been erected and maintained and the trestle of the south approach has been removed and replaced by a solid earth fill, the waters of the river have no longer eroded the south bank at that place.

That after the erection of the dike or embankment the waters were deflected in times of flood across and against the north bank at a point some 3,000 feet west of the north approach to the bridge, and that thereupon the defendant erected a series of jetties extending from the west side of said approach along the north bank toward the west for some 3,600 feet; that since the plaintiff acquired the land the waters in times of flood have been precipitated against said dike or embankment along the south bank and are by it deflected back across the bed of the river in a northeasterly direction against the plaintiff's land, and by reason thereof and of said dike or embankment, the excessive waters of the river were thrown against plaintiff's land and washed it away. That such damage is of recent origin and has occurred within the time the plaintiff owned said property.

Upon the motion of the defendant for judgment dismissing the action on the grounds that it is barred by the statute of limitations, the trial court found that it is not barred for the reason that until the plaintiff actually suffered damages by reason of the construction of said improvements by the defendant, he had no cause of action against the defendant, and that the statutory period for bringing the action had not expired. The motion was overruled, and the court entered judgment for the plaintiff.

All the assignments of error may be discussed and determined under two questions which will be applicable under the facts of this case, viz.:

(1) Has the plaintiff a cause of action against the defendant under the facts of the case?

(2) Did the trial court err in holding that the plaintiff's cause of action was not barred by the statute of limitations? If the contentions of the defendant as to either of these matters prevail, the judgment must be set aside; otherwise, it must be affirmed.

1. It is contended by the defendant that the dike or embankment was a permanent structure, and that any damages to the land, present and prospective, were recoverable in a single action; that the right to bring such action accrued when the dike was completed, and plaintiff's action is therefore barred by the statute of limitations. For the dike was first built in 1896, and was partially reconstructed in 1906 after a flood in 1903; and plaintiff did not acquire the land until August, 1929, and knew it was in place when he bought the land. The dike was built on the south bank of the river and the land was on the north bank thereof. Under the Oklahoma Statute (C. O. S. 1921, sec. 185, third subdivision; O. S. 1931, sec. 101), such an action must be brought within two years after it accrues or it is barred.

The evidence shows that by reason of the embankment on the south side of the river and the jetties on the north side west of the bridge, the channel of the river has been narrowed to the width of the length of the bridge creating something of a "bottleneck;" and that the waters flowing from the west first strike the embankment, are by it deflected toward the north across to the jetties, and then forced eastward under the bridge and the north end thereof against the plaintiff's land; and after emerging from this "bottle-neck" the channel greatly widens out toward both the north and the south eastward from the bridge. The evidence further shows that little, if any, erosion or washing away of the land occurred until after the plaintiff acquired the premises.

In this case the court is dealing, not with the usual and ordinary conditions prevailing in the waters of a river, but with the unusual and extraordinary emergencies created by high waters at extreme flood under which the wide bed of a sandy stream with only a narrow thread of sluggish water is enlarged and expanded into a raging torrent almost a mile wide and many feet deep, filled with silt and sand, with swift currents leaping from bank to bank and moving onward with great velocity. The embankment was not built by the defend-

ant to protect its property against the usual conditions of the river, but against high waters and menacing floods; and during most of the time the river is harmless and does no damage; but when the turbulent waters swell into a flood, there is no escape from their destructive ravages. The following rules applicable to such facts are fundamental:

(1) It is fundamental that no one may change, divert, obstruct, or otherwise interfere with the natural flow of a water course without being chargeable in damages to persons and properties injured thereby.

"It is the well-settled general rule that a riparian proprietor has a right to have the water of a stream flow down to his land as it is wont to run, in its natural mode and course, undiminished in quantity and unimpaired in quality. * * * The right to the continued existence of these conditions is property, to protect which the owner may resort to any or all of the instrumentalities which may be employed for the protection of private property rights." 27 R. C. L. pp. 1091, 1092, 1093, sec. 30, and the many authorities there cited.

"One who changes the course of a stream must, however, do so in such a manner as will not injure the adjoining proprietor either above or below. He must not, by changing the course of the stream, so increase or diminish its velocity as to cause damage to the land of the adjoining proprietor. * * *" 27 R. C. L. p. 1095, sec. 32, and authorities there cited.

(2) It would reasonably appear that any change made in the natural current, course, or flow of such water course by which the waters thereof are caused to erode the lands of another is within this well-established rule.

"Without a grant, either express or implied, an upper owner has ordinarily no right to accelerate the impelling force of a stream of running water, as by deepening the channel or removing natural obstructions therefrom to the injury of a lower owner. And this is true though there be no damage at the point where the stream enters the lower tract, but only further down. * * * Even though the upper owner is a railroad company and its roadbed is endangered by the flood waters retained by the jam, its liability is not relieved by the necessity, for while it may be conceded that it is the imperative duty of a railroad to protect its roadbed from injury or destruction, the necessity for action gives it no right to turn the water resting against it, upon the proprietors below to

their injury. * * * Dams, dikes, embankments and the like may be constructed in or along floatable streams to facilitate their use, but not to the extent of injuring the riparian proprietors by retarding the flow of the water or sending it down in increased volume to their injury. * * *" 27 R. C. L. sec. 35, p. 1099.

(3) While the owner of lands situated upon a water course may construct an embankment thereon to protect his land from high waters in times of flood, yet, in doing that, he must so place his embankments that the natural and probable consequences in times of ordinary floods will not cause the overflow to erode, destroy or injure the lands of other proprietors upon the water course. Town of Jefferson et al. v. Hicks, 23 Okla. 684, 102 P. 79.

(4) A "water course," in the legal meaning of the words, does not consist merely of the stream as it flows within the banks which form its channel in ordinary stages of water. When, in times of ordinary high water, the stream extending beyond its own banks is accustomed to flow down over the adjacent lowlands in a broader but still definable stream, it has still the character of a water course, and the law relating to water courses is applicable rather than that relating to mere surface water. Idem.

Applying the foregoing principles to the facts in this case, it is apparent that the defendant in efforts to protect its bridges went far beyond its legal rights, and invaded the rights of plaintiff; in its program of self-defense it became the aggressor, and therefore liable in damages to one made to suffer from its excessive zeal, its prodigality of precaution, its profligacy of prudence, and its disregard of duties and obligations to its neighbor.

By its embankments and jetties it confined the waters within the two low banks adjacent to the bed of the river itself, prevented them from flowing to the south and to the north beyond those banks and under the north and south approach to the bridge, over which low-lying lands they were naturally accustomed to flow in times of ordinary flood, caused the main highwater channel to move far northward from its natural and accustomed place, created a narrow "bottle-neck" limited in width to the length of the bridge, greatly increased the natural velocity of the current and thereby caused injury to the plaintiff. Long before the dikes and jetties were completed it had such knowledge and experience with the river at that place as to be well ac-

quainted with its habits and character and knew what floods could reasonably be expected to occur thereafter. Under such circumstances, it cannot be heard now to plead that it acted in its necessary self-defense in changing the channel of the river, in narrowing its confines and preventing its waters from flowing over the lowlands adjacent to the banks, and be excused from answering for its excessive prudence to one whom its activities have damaged.

"A riparian owner has no right to construct an embankment or barrier along the normal bank of the stream, to protect his land from the overflow thereof, when such embankment or barrier will cause the waters of the stream in times of ordinary floods, to damage the lands of other riparian proprietors." 16 A. L. R. 629, note and other authorities.

"A landowner may fill in and raise the level of his ground and erect embankments to protect his premises from overflow of water; but he has no right to cast the water on the land of another to his injury." Ladd v. Redle, 12 Wyo. 362, 75 P. 691.

"Flood waters of a river which become severed from the main current, or leave it never to return, and spread out over lower ground, become surface water; but if they form a continuous body with the water flowing in the ordinary channel, or if they depart therefrom presently to return, they are to be regarded as still a part of the stream, subject to the law as to obstruction thereof." Fordham v. Northern Pac. Ry. Co., 30 Mont. 421, 76 P. 1040.

"Under the common law, overflow waters of a stream which still form part of the stream may not be obstructed by a railroad company by a fill along its right of way without openings, so as to injure the property of another." Fordham v. Northern Pac. Ry. Co., 30 Mont. 421, 76 P. 1040; Gray v. McWilliams, 98 Cal. 157, 32 P. 976, 21 L. R. A. 593, 35 Am. St. Rep. 163.

"A riparian owner may repel the water flowing in a stream and cause it to flow in the channel of the stream which it has left during high water, if by so doing he inflicts no injury to the riparian owner upon the opposite side of the stream." Boise Dev. Co. v. Idaho Trust & Sav. Bank, 24 Idaho, 36, 133 P. 916, 16 A. L. R. 630, and authorities there cited.

"A riparian owner upon a stream may construct necessary embankments, dikes, or other structures to maintain his bank of the stream in its original place and condition, or to restore it to that condition, and to bring the stream back to its natural course, when it has encroached upon his land; and if he does no more, other riparian owners cannot recover damages for the injury his action causes them." G., C. & S. F. Ry. Co. v. Clark, 101 Fed. 678.

"One consequence of the interference by an upper proprietor with the flow of a stream may be to deflect the current so as to cast it directly against the banks of the lower proprietor, the inevitable consequence of which would be the washing away or destruction of a portion of his land. Such action on the part of the upper proprietor is generally held to be wrongful even though it is done by him for the purpose of protecting his own property." 27 R. C. L. 1098; and Idem, 1100, 1103, 1108.

It therefore must be held that the plaintiff, under the facts of this case, has a cause of action against the defendant for damages to his property.

2. It therefore appearing from the evidence that the damages to the plaintiff's land were caused by the embankment erected by the defendant for protecting its property on the south bank of the river from overflow water and thereby deflecting that overflow from where it formerly was accustomed to run naturally, and eventually caused the building up of the surface level behind said embankment and behind the jetties on the north bank, and thereby caused the overflow water to be deflected against the plaintiff's land, causing it to be eroded and washed away, and that the embankment was the proximate, participating, and moving cause thereof, it remains to determine whether under the law plaintiff's cause of action, in view of the particular facts and circumstances in evidence in this case, is barred by the statute of limitations relating to such matters.

It is not contended by the plaintiff that the mere construction of the dike or embankment and of the jetties was in itself an invasion of his rights, nor that defendant was not within its rights in building them, but he does contend that his damages were caused by the deflection of water by the dike and other structures working together in producing that result; and that regardless of when the dike was built and regardless of its character as to being temporary or permanent, it did not become a nuisance until actual damages resulted. For at the time of its construction it was wholly impossible for any person or tribunal to know, anticipate, or determine what if any damage would result from its maintenance, and that no one could have or bring an action merely because of its erection and maintenance, but of necessity must wait for his cause of action to accrue until, if, and when he had suffered actual damages.

There is much force in this contention. Upon such a state of facts, the authorities seem to be uniform and without exception. Until damages become real, actual not imaginary, certain not fanciful, somewhat permanent in nature and not merely casual or transitory, substantial and not merely trifling or nominal, no cause of action could exist and no tribunal would or could entertain such a proceeding.

"When the damages caused by an interference with a stream are continuing or recurring, the right of action for each recurring injury is in the owner of the premises at the time the injury results." 27 R. C. L. 1117; Sutherland on Damages, vol. 4, secs. 1038, 1039, 1040.

"The rules applicable to the recovery of damages for the construction and continuance of nuisances in cases of this kind, are stated satisfactorily to this court by numerous authorities as follows: Whenever the nuisance is of a permanent character and its construction and continuance are necessarily an injury, the damage is original and may be at once fully compensated. In such case, the statute of limitations begins to run upon the construction of the nuisance. But when such structure is permanent in its character and its construction and continuance are not necessarily injurious but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries." C., R. I. & P. Ry. Co. v. Davis, 26 Okla. 434, 109 P. 214.

"If all damages that may ever result from the nuisance are in law the result of its construction as an original wrong, then everything that is a damage in legal contemplation, whether for past or prospective losses, is recoverable in one action; but if the wrong be continuing and the injuries successive, the damage done by each successive injury may be recovered in successive suits, and the injury to be compensated in the original suit is only the damage that has happened." Railway Co. v. Cook, 57 Ark. 387, 21 S. W. 1066.

"The roadbed and embankment are permanent and continuous structures; and if their erection had given the plaintiff a cause of action, and then, all the damage which could have resulted, had resulted, the statute of limitations would have commenced to run from the time of their completion. But if the thing complained of is not necessarily injurious, or is not an invasion of the rights of another, of itself affording no cause of action, then whatever of legal injury may result from it, furnishes a cause of action accruing when the injury occurs, and then the statute of limitations commences to run; and there may be as many successive suits and recoveries, as there are successive injuries." Savannah, A. & M. Ry. v. Buford, 106 Ala. 303, 17 So. 395.

See, also, A., T. & S. F. Ry. Co. v. Kelly, 130 Okla. 213, 266 P. 775; Wood on Limitations, vol. 2, p. 886, sec. 187 d. (7); citing St. L., etc., Ry. Co. v. Stephens, 72 Ark. 127, 78 S. W. 766, and many cases from Indiana, Nebraska, South Carolina, Texas, and A., T. & S. F. Ry. Co. v. Eldridge, 41 Okla. 463, 139 P. 254; C., R. I. & P. Ry. Co. v Humphreys, 107 Ark. 330, 155 S. W. 127; Gloss-Scheffield Steel & Iron Co. v. Mitchell, 167 Ala. 226, 52 So. 69; Kansas City v. King, 65 Kan. 64, 68 P. 1093; City of Louisville v. Norris, 111 Ky. 903, 64 S. W. 958, 98 Am. St. Rep. 437; Greeley Irr. Co. v. Von Trotha, 48 Colo. 12, 108 P. 985; Irvine v. City of Oelwein (Iowa) 160 N. W. 674; Barnett v. St. Francis Levee Dist., 125 Mo. App. 61, 102 S. W. 583; Kellogg v City of Kirkville, 149 Mo. App. 1, 129 S. W. 57; Powers v. St. Louis, etc., Ry. Co., 158 Mo. 87, 57 S. W. 1090; Id., 71 Mo. App. 540; and City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867.

It is not necessary, under the facts of this case, to enter upon an academic discussion in order to classify the structures erected and maintained by the defendant as temporary or permanent, as abatable by the expenditure of labor and money or otherwise. It is clear that the damages are occasional and not continuous; are recurring rather than habitual, and that only at long intervals which cannot be anticipated or foreseen do they occur at all. It is possible that the defendant could abate something of these structures with slight expenditure and little effort, and still have all protection necessary for its bridge and railway without causing injuries to the owners of other properties. Be that as it may, it is unquestioned that the injuries suffered by the plaintiff were caused and brought about by the acts of the defendant in confining the waters of the river at times of flood into a narrow channel, much less in width than nature had provided for their passage toward the sea, and that it should respond in damages therefor. It further clearly appears that these injuries were suffered by the plaintiff within the statute of limitations, and his action therefore was commenced only a few weeks at most after they were inflicted. Such being the facts and the law, there was no error in the trial court so holding and rendering judgment accordingly.

"Aside from what is said in the foregoing opinion, it strikes us as unreasonable to argue that a cause of action is barred by limitations before it arises. The facts in the case at bar do not disclose that plaintiff ever sustained any damage prior to the overflow complained of, and if the embankment in question, be it ever so negligently constructed had been maintained for a century, the plaintiff would have had no cause of action for damages sustained until they were sustained; hence his right of action necessarily dated from the date of his injuries." A., T. & S. F. Ry. Co. v. Eldridge, 41 Okla. 463, 139 P. 254.

Judgment affirmed.

The Supreme Court acknowledges the aid of District Judge Freeman E. Miller, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.