LOWDEN et al. v. BOSLER.

No. 31812. June 26, 1945.

Rehearing Denied Oct. 9, 1945.

Application for Leave to File Second Petition for Rehearing Denied Dec. 11, 1945.

*163 P. 2d 957.*

W. R. Bleakmore and James E. Grigsby, both of Oklahoma City, for plaintiffs in error.

Fogg, Fogg & Fogg, of El Reno, for defendant in error.

CORN, J. This action was commenced by the plaintiff, Ben Bosler, in the district court of Canadian county, to recover damages caused to land, crops, and other property of plaintiff by reason of the construction of certain jetties by the defendant railway company in the South Canadian river below plaintiff's land which plaintiff alleged changed the flow of the river, causing it to wash away and destroy 19 acres of land owned by the plaintiff, and certain crops which were growing upon land inundated by the overflow of the river. It is also alleged that the floods washed away fences, and came within 125 feet of plaintiff's house, which caused him to move the house farther away from the river. The plaintiff alleged the damages to be $2,829, and prayed judgment in said sum.

The cause was tried to the jury, and a verdict was returned for the sum of $1,160, upon which the court rendered judgment. For convenience the parties will be referred to herein as plaintiff and defendant, as they appeared in the trial court.

Plaintiff alleged that the jetties extended out into the river 1,200 to 1,500 feet, and caused the river to change its natural flow and course, and to overflow on plaintiff's land and crops, causing the damages alleged.

The defendant seeks reversal on the ground that the evidence is insufficient to support the verdict of the jury.

It is urged by defendant that the testimony of the plaintiff's witnesses is contrary to the ordinary operation of physical forces, and should be given no weight. The defendant interprets the testimony of these witnesses as an assertion that when the water descended upon the jetties the current reversed itself and flowed back up stream.

The testimony of all the witnesses is in agreement upon the fact that the system of jetties extended out into the river no less than 1,500 feet; that the water rolled up against the jetties, swirled and spread out over the adjacent lowlands, and that driftwood was seen floating in a somewhat reverse direction out into the flooded area.

We see nothing improbable or contradictory to natural law about this testimony, but regard it rather as a fair description of what occurs when a current of water strikes an obstruction. Under such conditions, it is a matter of common knowledge that water rolls up, swirls, and eddies in the direction of least resistence. Naturally the size of the whirlpool is determined by the various factors involved, the principal factor in this situation being the size or length of the jetty, and its relative degree of obstructiveness. It extended nearly a third of a mile out into the river, and was placed there for no other purpose than to obstruct the flow of the water and to cause the main channel of the river to flow to the right of the obstruction. An obstruction of such pro-

portions may well be calculated to set up a circular backward and outward movement of a mile, or more, as shown by the testimony of these witnesses, and as indicated by the photostatic copy of the map prepared by the division engineer of the defendant railway company. The affected area includes the plaintiff's land involved in this case.

The evidence showed the important fact that the obstruction placed in the river by the defendant restricted the stream to narrower limits, which would naturally raise the level of the water in a corresponding degree, and in addition to that the water rolled up to a higher level where it met the obstruction and swirled out over the adjacent lands the distance of more than a mile upstream from the jetties. The plaintiff's land was from a half to three-fourths of a mile above them.

The witnesses were men who had lived many years near the river and were familiar with its past history. They saw what occurred where the stream came in contact with the obstruction, and related what they had seen to the jury, and the jury drew its own conclusion as the cause of the damage to the land. The finding by the jury that the overflow of the river upon the land of the plaintiff and the resulting damages to the land were caused by the defendant in the construction of the jetties in river is amply supported by the evidence.

This case comes within the rule followed in the case of Atchison, T. & S. F. Ry. Co. v. Hadley, 168 Okla. 588, 35 P. 2d 463, wherein this court, in paragraph 1 of the syllabus, said:

"A riparian proprietor may lawfully erect and maintain any work or embankment to protect his land against overflow by any change of the natural state of the river and to prevent the old course of the river from being altered; but such a riparian proprietor, though doing so for his convenience, benefit, and protection, has no right to build anything which in time of flood will throw waters on the lands of another such proprietor so as to overflow and injure him."

Considering the evidence sufficient to support the verdict and judgment, the judgment is affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., concur.